IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | 06-658-01 |
| | : | |
| JOHN MICHAEL CRIM | : | CIVIL ACTION |
| | : | 14-7258 |

July 5, 2016                                                                  Anita B. Brody, J.

## MEMORANDUM

Currently before me is John Michael Crim's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. For the reasons set forth below, I will deny Crim's § 2255 motion.

## I. BACKGROUND

### A. Indictment and Prosecution

On April 24, 2007, a grand jury in the Eastern District of Pennsylvania returned a superseding indictment charging several individuals, including Crim, with conspiracy to defraud the Internal Revenue Service ("IRS"), as well as corruptly endeavoring to obstruct the administration of the tax laws. These charges stemmed from the individuals involvement in an organization known as the Commonwealth Trust Company ("CTC"), a company co-founded by Crim that sold domestic and foreign trusts. CTC advised clients that they could escape paying federal income tax by diverting their income through CTC trusts, and instructed clients to transfer assets they already had into these trusts to protect the assets from IRS liens and seizures.

On January 28, 2008, a jury found Crim guilty of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count One), and corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue laws, in violation of 18 U.S.C. § 7212(a) (Count Two).

### B. Crim's Sentencing and First Appeal

On June 27, 2008, Crim was sentenced to 96 months of imprisonment, three years of supervised release, a $200 special assessment, and restitution, joint and severally, in the amount of $17,242,806.57. Crim appealed his conviction and sentence.

The Third Circuit consolidated Crim's appeal with the appeals of several of his co-Defendants, John Brownlee, Anthony Trimble and Constance Taylor. *United States v. Crim*, 451 F. App'x 196, 201 (3d Cir. 2011) [hereinafter *Crim I*]. On November 15, 2011, the Third Circuit affirmed the convictions of Crim, Brownlee, and Taylor and affirmed the sentences of Brownlee, Taylor, and Trimble. *Id.* at 210. The Third Circuit vacated Crim's sentence because it was error to sentence Crim to 96 months of imprisonment on both counts of the indictment, instead of sentencing him separately on each count of the indictment. *Id.* at 209. The Third Circuit remanded this matter to this Court "with instructions . . . to impose sentence on each count." *Id.* Additionally, the Third Circuit vacated the award of restitution entered against Crim and Taylor. The Third Circuit remanded the award of restitution to this Court to clarify "the amount of restitution and the method, manner and schedule of payments, after taking into account the financial resources of each." *Id.* at 210.

### C. Crim's Resentencing and Second Appeal

On September 24, 2012, Crim was resentenced to 60 months of imprisonment on Count One and 36 months of imprisonment on Count Two, to run consecutively for a total term of 96 months of imprisonment. This Court again imposed the same conditions on Crim as imposed at his original sentencing, including restitution, joint and severally, in the amount of $17,242,806.57. Additionally, this Court ordered Crim, based on his financial resources, to pay

2

$100 annually in restitution during his period of incarceration. Crim appealed this Court's order resentencing him.

On January 16, 2014, the Third Circuit affirmed this Court's order resentencing Crim. *See United States v. Crim*, 553 F. App'x 170 (3d Cir. 2014) [hereinafter *Crim II*].

On December 18, 2014, Crim filed his habeas corpus petition.

## II. STANDARD OF REVIEW

Section 2255 empowers a court to "vacate, set aside or correct" a sentence that "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "A section 2255 petition is not a substitute for an appeal, nor may it be used to relitigate matters decided adversely on appeal." *Gov't of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1074-75 (3d Cir. 1985) (citation omitted). If a party is entitled to relief under § 2255(a), "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* § 2255(b). A petitioner is entitled to an evidentiary hearing unless the motion, files, and records of the case show conclusively that the petitioner is not entitled to relief.[1] *Id.*

## III. DISCUSSION

Crim contends that he is entitled to relief because trial and appellate counsel rendered ineffective assistance of counsel.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established the legal framework for determining Sixth Amendment claims of ineffective assistance of counsel. *Strickland* sets forth a two-part test for claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

---

[1] Crim is not entitled to an evidentiary hearing because the record conclusively establishes that his claims are not meritorious.

> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. "Under *Strickland*'s first prong, a court must determine whether, in light of all the circumstances, the identified acts or omissions of counsel were outside the range of professionally competent assistance." *Grant v. Lockett*, 709 F.3d 224, 234 (3d Cir. 2013). A court's evaluation of an attorney's performance must be "highly deferential." *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The second prong of *Strickland*, prejudice, requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Accordingly, "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

Crim raises twenty-three separate claims of ineffective assistance of counsel that he labels as claims A through W. For the reasons discussed below, his claims do not provide a basis for relief.

### 1. Limiting Instructions Regarding Cooperating Defendants (Claim A)

Crim contends that his trial counsel was ineffective for failing to object to the Court's omission of an agreed-to instruction on the cooperating defendant's guilty pleas from its final jury charge. The Court followed the Third Circuit's Model Criminal Jury Instruction § 4.19, but inadvertently omitted the second portion of the model jury instruction. On appeal, Crim raised the Court's omission as a basis for overturning his conviction. The Third Circuit rejected his argument: "While not complete, the charge given in this case was sufficient to inform the jury of the limited purpose for which the guilty pleas could be considered. . . . There was no error, much less a plain one, by omitting this part of the model jury instructions." *Crim I*, 451 F. App'x at 207. Because the Court did not commit an error, counsel cannot be ineffective for failing to raise this meritless argument.

### 2. Sufficiency of Tax Loss Evidence (Claim B)

Crim argues that his trial counsel was ineffective for failing to object to the Court's calculation of the tax loss charged against him. On appeal, Crim raised several challenges to the Court's calculation of the tax loss, the same arguments he now alleges that his counsel was ineffective for failing to raise at trial. The Third Circuit held that the Court had committed "no error" in its tax loss calculation. *Crim I*, 451 F. App'x at 208. Crim cannot relitigate this matter that was already decided adversely on appeal.

### 3. Restitution (Claims C and F)

Crim argues that his trial counsel was ineffective for failing to object to several aspects of the Court's order of restitution. The plain and unambiguous language of § 2255, however, indicates that the statute only applies to "[a] prisoner in custody . . . claiming the right to be released." 28 U.S.C. § 2255(a). "The payment of restitution . . . is not the sort of 'significant

restraint on liberty' contemplated in the 'custody' requirement of the federal habeas corpus statutes." *Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir.2003). A claim for relief from a restitution order cannot be brought in a habeas corpus petition, whether or not the petition also contains cognizable claims for release from custody. *Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009); *Kaminski v. United States*, 339 F.3d 84, 89 (2d Cir. 2003); *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003); *United States v. Thiele*, 314 F.3d 399, 402 (9th Cir. 2002); *United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999); *Smullen v. United States*, 94 F.3d 20, 26 (1st Cir. 1996); *see also Virsnieks v. Smith*, 521 F.3d 707, 720–21 (7th Cir. 2008); *Obado*, 328 F.3d at 718. Crim cannot succeed on his claims regarding restitution because they are not cognizable under § 2255.[2]

### 4. Grouping of Counts of Conviction Under the Guidelines (Claim D)

Crim argues that his trial counsel was ineffective for failing to object to the Court's failure to group the two counts of conviction pursuant to U.S.S.G. § 3D1.2. Crim's counts of

---

[2] Even if these claims were cognizable, they are not meritorious. Crim argues that counsel rendered ineffective assistance by failing to object to the Court's lack of factual findings about his ability to pay all restitution within five years after the date of his sentencing and his ability to make periodic payments. Under the Mandatory Victims Restitution Act, however, "a sentencing court is required to order a defendant to pay the full amount of a victim's losses without considering the defendant's economic circumstances." *United States v. Turner*, 718 F.3d 226, 235 (3d Cir. 2013) (citing 18 U.S.C. § 3664(f)(1)(A)). Accordingly, the Court was required to order restitution without considering whether Crim could pay the full amount within five years. Additionally, at resentencing, the Court did consider Crim's ability to pay and, based on his financial resources, ordered him to pay $100 annually in restitution during his period of incarceration.

Crim also argues that trial counsel was ineffective for failing to object to the Court imposing the full restitution without any reduction for amounts subject to recovery. Crim contends that it was error to hold him liable for the entire restitution amount when his co-Defendants might have already paid some amount to the Government for its loss because he believes it would result in double recovery for the Government. The Court, however, sentenced Crim to pay restitution, joint and severally, in the amount of $17,242,806.57. "Accordingly, his restitution liability would be decreased by the payments collected by the IRS from his co-defendants and former clients." *Crim II*, 553 F. App'x at 173. Thus, the Court's decision to sentence Crim to pay the full restitution, joint and severally, will not result in double recovery for the Government, and does not prejudice Crim.

conviction, however, were grouped together for sentencing pursuant to U.S.S.G. § 3D1.2. Crim cannot succeed on this meritless claim.

**5. Base Offense Level (Claim E)**

Crim argues that his trial counsel was ineffective for failing to object to the Court's determination at sentencing to increase his base offense level by twenty-six levels. Crim contends that the Court's increase in his offense level based on a preponderance of the evidence violated his constitutional rights because it led to an increase in his sentence, which should have been determined by a jury beyond a reasonable doubt.

"Elements of a crime must be charged in an indictment and proved to a jury beyond a reasonable doubt. Sentencing factors, on the other hand, can be proved to a judge at sentencing by a preponderance of the evidence." *United States v. O'Brien*, 560 U.S. 218, 224 (2010) (citations omitted). Any fact that increases the mandatory minimum or statutory maximum is an element of a crime that must be submitted to a jury. *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). However, "facts relevant to the advisory United States Sentencing Guidelines need not be submitted to a jury. . . . [T]hese facts likewise do not require proof beyond a reasonable doubt." *United States v. Grier*, 475 F.3d 556, 559 (3d Cir. 2007).

The Court's increase of Crim's base offense level by twenty-six levels did not increase his mandatory minimum or statutory maximum; rather, it only increased his advisory Sentencing Guidelines range. Thus, the Court's increase in Crim's base offense level did not violate Crim's constitutional rights. Counsel was not ineffective for failing to raise this meritless argument.

### 6. Testimony of Wayne Rebuck (Claim G)

Crim argues that his trial counsel rendered ineffective assistance by failing to object to the testimony of Wayne Rebuck and request that Rebuck's testimony be stricken from the record. Specifically, Crim contends that Rebuck's testimony should not have been admitted because Rebuck perjured himself on the stand when he claimed that everyone in the CTC knew what was being done was illegal. Crim alleges that the Government knew or should have known about this perjury because, during cross-examination by Crim's trial counsel, "Rebuck admitted that he lied because his prior testimony was different." Pet'r's Mem. 38. The trial record, however, belies Crim's claim that Rebuck made any admission about lying. Crim also contends that "[t]rial counsel failed any attempt to impeach Mr. Rebuck's testimony." *Id.* at 42. The trial transcript, however, reflects that Crim's trial counsel vigorously cross-examined Rebuck. Crim also makes a variety of other allegations regarding his counsel's failure to adequately defend him in regards to Rebuck's testimony. Crim provides no evidentiary support for any of his allegations. Crim cannot succeed on this claim because his allegations regarding his trial counsel's treatment of Rebuck are baseless.

### 7. Sufficiency of the Evidence (Claims H and R)

Crim argues that his trial and appellate counsel were ineffective for failing to raise the sufficiency of evidence for Count One, conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. To prove a violation of § 371, the Government must establish the following elements beyond a reasonable doubt: "(1) an agreement to defraud the United States, (2) an overt act by one of the conspirators in furtherance of that objective, and (3) any conspirator's commission of at least one overt act in furtherance of the conspiracy." *Crim I*, 451 F. App'x at 201 (citing *United States v. Rankin*, 870 F.2d 109, 113 (3d Cir.1989)).

At trial, the Government established that Crim was the leader of CTC and a member of the Executive Board, along with co-Defendants John Brownlee, Constance Taylor, and Wayne Rebuck. Crim participated in the establishment of trusts that were merely alter egos of CTC clients who maintained control over their assets. Crim coordinated the trustees signing of blank trust documents for later use by CTC clients, and used his own signature as a named trustee on many of these documents. Crim also received cash for trust purchases. Furthermore, Crim attended many CTC training sessions, and was well-known to the CTC sales force. Crim was the final decision maker in all of CTC's relationships with offshore bank accounts. In conducting CTC business, Crim used a false name on his name tag at trainings, paid employees with no-name debit cards, and moved to Malta to reduce CTC's potential detection by the Internal Revenue Service. This evidence, along with much more evidence introduced at trial, overwhelmingly established that Crim was a key leader in the conspiracy to defraud the United States. Trial and appellate counsel were not ineffective for failing to contest the sufficiency of the evidence for Count One because such a challenge would have been meritless.

**8. Lack of Remorse (Claim I)**

Crim argues that his counsel was ineffective for failing to object to the Court's reliance on Crim's lack of remorse in determining his sentence. Lack of remorse, however, is an appropriate factor for a court to consider when fashioning a sentence. *See United States v. King*, 454 F.3d 187, 195 (3d Cir. 2006) (holding that the district court did not err in relying on lack of remorse to impose a sentence that fell above an advisory Guidelines range); 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and

consider for the purpose of imposing an appropriate sentence."). Counsel was not ineffective for failing to raise this meritless argument.

### 9. Potential Witnesses (Claim J)

Crim claims that his trial counsel rendered ineffective assistance by failing to investigate potential witnesses. Crim alleges that if his trial counsel had investigated, then he would have been able to call witnesses who "benefitted from business promotion." Pet'r's Mem. 69. There is not a reasonable probability that the outcome of the trial would have been different if trial counsel had called witnesses to testify that their businesses benefitted from CTC's "business promotion" because the Government presented overwhelming evidence that Crim was the leader of a conspiracy to defraud the United States. Thus, Crim cannot succeed on this claim.

### 10. Denial of Motion for Judgment of Acquittal (Claim K)

Crim argues that his counsel was ineffective for failing to argue that the Court improperly denied as untimely his motion for judgment of acquittal of Count Two pursuant to Federal Rule of Civil Procedure 29. Crim contends that the Court improperly denied his motion as untimely and failed to consider its merits. Although the Court concluded that the motion was untimely, it also concluded that "apart from its untimeliness, the Rule 29 motion fails on its merits." Am. Explanation and Order, ECF No. 609 at 2. Accordingly, Crim's argument is baseless and he cannot succeed on this claim.

### 11. Refusal to Provide Transcript of Closing Arguments to Jury (Claim L)

Crim argues that his counsel was ineffective for failing to object to the Court's refusal to allow the jury's request to hear a recorded transcript of the closing arguments. The Court, however, properly refused to provide the jury with such a transcript because the parties' closing arguments were not evidence to be considered by the jury. *See United States v. Sandini*, 888

F.2d 300, 311 (3d Cir. 1989) (stating that closing arguments are "simply not evidence"). Therefore, Crim cannot succeed on this meritless claim.

### 12. Plea Bargain (Claim M)

Crim argues that his trial counsel was ineffective for failing to provide him competent advice regarding a plea agreement. Specifically, Crim contends that counsel advised Crim that the maximum sentence he faced was five years of imprisonment and that he would not represent Crim if he took a plea deal. Crim does not allege that the Government made a plea offer or that he would have accepted a plea agreement if it was offered. Rather, he states: "It is not a stretch to deduce that *if* a plea deal was offered, presented and accepted by Petitioner, the outcome would have been different." Pet'r's Mem. 71 (emphasis added).

Crim relies on *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), to argue that counsel rendered ineffective assistance by failing to competently discuss the possibility of a plea agreement. In *Lafler*, however, the defendant was offered a plea deal, but rejected it on advice of counsel. 132 S. Ct. at 1383. The Supreme Court explained:

> If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. . . . It is, of course, true that defendants have no right to be offered a plea . . . . If no plea offer is made . . . the issue raised here simply does not arise.

*Id.* at 1387 (internal quotation marks omitted). Because Crim does not allege that a plea bargain was offered, he cannot claim that his counsel performed deficiently by failing to discuss a plea agreement. Even if counsel had somehow performed deficiently, Crim has not demonstrated any prejudice. In *Lafler*, the Supreme Court held that to establish prejudice as a result of rejecting a plea deal,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would

11

>not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1385. Crim has not alleged that he would have accepted a plea agreement. Rather, he states: "Had counsel given proper advice, Petitioner would have been able to make an informed decision to accept the deal or not." Pet'r's Mem. 71. Additionally, Crim has not alleged that the Government would have offered a plea agreement. Thus, Crim has not established that there is a reasonable probability that a plea offer would have been presented to the Court and accepted. Crim cannot succeed on this claim.

### 13. Failure to Pay Taxes (Claims N, T, and U)

Crim argues that the Government's comment during its closing argument that Crim had not paid his personal income taxes violated a stipulation that the subject of his taxes would not be mentioned. Crim contends that the Government's mention of his failure to pay taxes in its closing argument constituted "sandbagging" and a fraud upon the court, and that his trial counsel was ineffective for failing to object to these comments and seek a mistrial.

The Government read the following stipulation to the jury regarding Crim's failure to file tax returns: "[F]or the years 2000 through 2003[,] the IRS has no records of any tax returns filed by or on behalf of John Michael Crim." Tr. 1/14/08 at 224. There was no stipulation that Crim's failure to pay taxes would not be mentioned. Rather, the parties stipulated that no records of tax returns would be presented as evidence to the jury. *See* ECF No. 480; Gov't's Ex. 902. Moreover, the Court held that Crim's failure to file tax returns was admissible, and this ruling was affirmed by the Third Circuit. *Crim I*, 451 F. App'x at 204-05. Accordingly, the Government's reference to Crim's failure to file taxes during its closing was not improper. Crim cannot succeed on this meritless claim.

**14. Failure to Amend Superseding Indictment (Claim O)**

Crim argues that after the language "up to ten million dollars" was stricken from the superseding indictment, the superseding indictment was not amended and thus the jury did not find a loss amount. Crim contends that his trial counsel rendered ineffective assistance by failing to object to this issue.

The loss amount, however, was not an essential element of either Count One or Count Two in the superseding indictment. To prove Count One, conspiracy to defraud the United States, the Government must prove: "(1) an agreement to defraud the United States, (2) an overt act by one of the conspirators in furtherance of that objective, and (3) any conspirator's commission of at least one overt act in furtherance of the conspiracy." *Id.* at 201 (citing *United States v. Rankin*, 870 F.2d 109, 113 (3d Cir.1989)). To prove Count Two, corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue laws, the Government must prove: "(1) corruption, force, or threat of force, and (2) an attempt to obstruct the administration of the IRS." *Id.* at 201. The superseding indictment did not have to be amended because the jury did not have to find a loss amount. Crim cannot succeed on this meritless claim.

**15. Brady Violation (Claim P)**

Crim argues that the Government committed a *Brady* violation by withholding information that could have been used to impeach co-Defendant Wayne Rebuck by showing that Rebuck sent emails explaining that the trusts were legal and the trust business was not a scheme. Crim speculates that information was withheld because the Government withheld documents in *United States v. Bitterman*, No. 5:09-cr-772-JKG (E.D. Pa.) [hereinafter *Bitterman* Action], which was another prosecution of CTC clients. In the *Bitterman* Action, however, the

documents that were withheld were the very documents produced to Crim and his co-Defendants. *See Bitterman* Action, Opinion, ECF No. 245 at 90-93.

"To establish a Brady violation, it must be shown that (1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment." *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006). "Evidence is favorable if it is impeaching or exculpatory." *United States v. Georgiou*, 777 F.3d 125, 139 (3d Cir. 2015). "Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (internal quotation marks omitted). Accordingly,

> [t]he materiality of *Brady* material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state. Suppressed evidence that would be cumulative of other evidence or would be used to impeach testimony of a witness whose account is strongly corroborated is generally not considered material for *Brady* purposes. Conversely, however, undisclosed evidence that would seriously undermine the testimony of a key witness may be considered material when it relates to an essential issue or the testimony lacks strong corroboration.

*Johnson v. Folino*, 705 F.3d 117, 129 (3d Cir. 2013) (internal quotation marks and citations omitted).

Crim provides no support for his contention that any evidence was suppressed in his case. Regardless, even if evidence was suppressed that Rebuck sent emails explaining that the trusts were legal and the trust business was not a scheme, this alleged impeachment evidence is not material. At trial, Crim relied on a good-faith defense based on the premise that he did not know that CTC's products were illegal and thus did not have the intent to defraud the United States—a required element of Count One. In conflict with this good-faith defense, Rebuck testified that during the entire time he was working at CTC he knew the trusts were fraudulent. Crim appears to argue that if the Government had given him emails Rebuck sent explaining that the trusts were

14

legal and the trust business was not a scheme, he could have used these emails to impeach Rebuck's statements and show that Rebuck initially believed the trusts were legal, which would have supported Crim's good-faith defense.

At trial, Crim's attorney, as well as his co-Defendants' counsel, vigorously cross-examined Rebuck on his testimony that he always believed the trusts were illegal. For instance, Crim's attorney referenced CTC literature, official statements, and memoranda that the trusts were lawful, pointed to several statements that Rebuck had made after he began cooperating to IRS Special Agent Christopher Hueston that indicated that Rebuck may have initially believed the trusts were legitimate, and questioned Rebuck regarding his testimony in another CTC trusts trial where Rebuck stated that he believed what he was doing was right at the time. *See, e.g.,* Tr. 1/14/08 at 105-136. There is no reasonable probability that the outcome of trial would have been different if these alleged emails had been presented to the jury. The alleged suppressed emails are cumulative of the many other materials available, and used by counsel, to impeach Rebuck's assertion that he always knew the trusts were fraudulent. The jury either didn't credit the impeachment evidence presented, or did not believe that that it showed that Crim was unaware that the trusts were illegal. The emails would not have changed the jury's conclusion, especially given that the Government presented other substantial evidence throughout the trial that undermined Crim's good-faith defense. Thus, this alleged suppressed evidence was not material. Crim cannot succeed on this claim because no *Brady* violation occurred.

**16. Conflict of Interest (Claim Q)**

Crim argues that attorney Jonathan Altman's representation of co-Defendant Taylor in this case, while simultaneously representing CTC trusts in a civil action, is a conflict of interest.

15

"The Sixth Amendment guarantees a criminal defendant counsel's undivided loyalty free of conflict of interest." *Hess v. Mazurkiewicz*, 135 F.3d 905, 910 (3d Cir. 1998) (internal quotation marks omitted). "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). To prove that trial counsel had an actual conflict of interest, a defendant must establish the following two elements:

> First, he must demonstrate that some plausible alternative defense strategy or tactic might have been pursued. He need not show that the defense would necessarily have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative. Second, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.

*United States v. Gambino*, 864 F.2d 1064, 1070 (3d Cir. 1988) (internal quotation marks omitted). Put another way, "[a]n actual conflict exists only if the proposed alternative strategy (a) could benefit the instant defendant and (b) *would violate the attorney's duties to the other client*." *United States v. Morelli*, 169 F.3d 798, 811 (3d Cir. 1999). A court must presume prejudice and conclude that counsel rendered ineffective assistance of counsel if a defendant demonstrates the existence of an actual conflict of interest. *Id.* at 810.

Jonathan Altman did not represent Crim at trial, and Crim does not allege that his trial counsel had any conflict of interest. The Sixth Amendment only guarantees Crim the right to be represented by counsel with undivided loyalty—a right that Crim received. Even if Altman's dual representation could somehow be construed as a viable Sixth Amendment challenge, Crim cannot succeed on this claim because he has not shown a plausible alternative strategy that might have been pursued, but was inherently in conflict with or not pursued due to his attorney's

loyalties to another client. Crim cannot succeed on this claim because no violation of his Sixth Amendment right to conflict-free counsel occurred.

**17. Resentencing (Claims S and W)**

Crim argues that the Court erred at resentencing when it failed to reduce his loss amount from $17,242,806.57 to $3,782,358.11, the amount remaining to be collected by the IRS. Additionally, Crim argues that the Court erred in summarily denying his three motions filed in conjunction with his resentencing. To the extent that Crim seeks to alter his restitution, these claims are not cognizable under § 2255. *See supra* Section III.3. Even if the claims are cognizable, however, the Third Circuit has already held that the Court did not err when it resentenced Crim to the same restitution amount and rejected his resentencing motions.

In his second appeal to the Third Circuit, Crim raised the exact same issues he now raises regarding his resentencing. *See Crim II*, 553 F. App'x 170. In *Crim II*, the Third Circuit affirmed the Court's resentencing order because it had only granted a limited remand to the Court after Crim's first appeal, "to do two things: (1) impose a sentence on each of Crim's convictions and (2) set the *manner* and *schedule* for restitution payments after consideration of Crim's economic circumstances." *Crim II*, 553 F. App'x at 173. The Third Circuit explained that the Court could not have resentenced Crim to a different restitution amount or granted his resentencing motions without exceeding the Third Circuit's mandate. *Id.* at 173 and n.2. Thus, the Court did not commit any error in refusing to reduce Crim's loss amount and denying his resentencing motions. Crim cannot succeed on this meritless claim.

**18. Actual Innocence (Claim V)**

Crim also seeks relief based on actual innocence. The Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual

innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013). Rather, the Supreme Court has only recognized it as a gateway that allows a Court to consider an otherwise barred constitutional claim. *See, e.g., McQuiggin*, 133 S. Ct. at 1928; *Schlup v. Delo*, 513 U.S. 298, 316 (1995). The standard for actual innocence is demanding, even when raised as an actual-innocence gateway claim. *See McQuiggin*, 133 S. Ct. at 1936. "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* (quoting *Schlup*, 513 U.S. at 316).

Crim has presented no evidence of his innocence. Rather, the record overwhelmingly establishes his guilt. Crim cannot succeed on this meritless claim.

## IV. CONCLUSION

For the reasons set forth above, I will deny Crim's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. There is no basis for the issuance of a certificate of appealability.[3]

ANITA B. BRODY, J.

O:\ABB 2016\L - Z\USA v. Crim 2255 Memorandum.docx

Copies **VIA ECF** on _____ to:    Copies **MAILED** on *07-06-2016* to: *John M. Crim, Deft.*

---

[3] A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Crim has not shown that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong.